ERIK R. RAMSTAD, James Johnson, and Elinora Roach, Administratrix of the Estate of Joseph Roach, Deceased, v. A. CARR, Alex Scarlett, R. H. Bosard, John Ehr, and F. B. Lambert, as Park Commissioners of the Park District of the City of Minot.

(L.R.A. —, —, 54 N. W. 195.)

**Owner of land — dedication — intent.**

    1. There can be no dedication, in the absence of an intent on the part of the owner to dedicate.

**Dedication — intent — determined from acts of owner — not from some hidden purpose.**

2. Such intent, however, is to be ascertained from the acts of the owner, and not from the purpose hidden in his mind.

**Owner of lands — plats and sells property with reference to plat — dedication of public places shown — streets — intention.**

3. When the owner plats his property, and sells lots with reference to the plat, he thereby manifests an indisputable intention to dedicate the public places shown on such plat.

**Park — designated on plat — dedication — intention.**

4. The word "park" written upon a lot of land designated upon such plat is as significant of a dedication and of the use to which the land is dedicated, as is the word "street" written thereon.

**Park — meaning of — public place — setting apart for use.**

5. The ordinary American meaning of a park is a piece of ground set apart and maintained for public use, and laid out in such a way as to afford pleasure to the eye as well as opportunity for open-air recreation, and the term is not applicable to private inclosures enjoyed by the few to the exclusion of the public.

**Numbering of lots on plat — public use — dedication — intention.**

6. The designation of a lot by a number upon a plat, laid out under the statute which requires persons making the plat to describe all lots intended for sale by progressive numbers, is not incompatible with a purpose on the part of the owner to dedicate the lot to public uses.

**Statutory dedication — grant.**

7. A statutory dedication is in the nature of a grant.

**Dedication — municipality — acceptance by.**

8. And such dedication does not become effective or binding upon the municipality, or render it subject to the duties or liabilities of ownership until the dedication has been accepted.

**Acceptance — beneficial — presumed.**

9. But acceptance of a dedication may be presumed when it is beneficial to the donee.

**Formal acceptance not necessary — acts — conduct — municipal officers — dominion over — assumption.**

10. Formal acceptance of a dedication is not required, but such acceptance may be manifested by any act or conduct on the part of the proper municipal officers, which clearly indicates an assumption of dominion over the property dedicated.

**Statutory dedication — filing plat — selling property — withdrawn only by vacation — statute.**

11. A statutory dedication by the filing of a plat, and the sale of lots by the owner with reference thereto, can be withdrawn only by a vacation of the plat under the statute.

**Dedication — effective — withdrawn — rejected.**

12. Such dedication continues effective until withdrawn by the donor, or rejected by the donee.

**Dedication — formal rejection — implied rejection — acts and conduct — intention.**

13. A dedication may be rejected formally; or rejection may be implied from acts on the part of the municipality clearly indicating an intention to reject.

**Taxing officers — assessment of dedicated property — effect of.**

14. Officers for assessing taxes do not represent the public for the acceptance of dedications, and the fact that the land dedicated is assessed and taxes collected thereon by the municipality does not of itself negative an acceptance of the same for public purposes.

Opinion filed June 29, 1915.

From a judgment of the District Court of Ward County, *Leighton, J.* Defendants appeal.

Reversed and remanded.

*George A. McGee* for appellants, *F. B. Lambert,* of counsel.

Where the owner plats land into lots, blocks, streets, and alleys, and the plat thereof is duly executed, filed, and recorded, and all done as by the laws of this state provided, and where a portion of such land is marked and designated on the plat as a park; and where such owner in thereafter selling the lots used such plat, made reference to the said park and to its location, and issued his deeds describing the lots sold as "according to the plat," and where the proper public officials have assumed dominion over such park,—the whole amounts to a conveyance, dedication, or grant to the public. Comp. Laws 1913, § 3946; Cole v. Minnesota Loan & T. Co. 17 N. D. 409, 117 N. W. 354, 17 Ann. Cas. 304; Elliott, Roads & Streets, p. 92; Pittsburgh, C. C. & St. L. R. Co. v. Crown Point, 150 Ind. 536, 50 N. E. 745.

In such a case the grantor is estopped, as well in reference to the public as to his grantees, to deny the existence of the park and the easement in the public. 12 Cyc. 454, note 75; Elliott, Roads & Street,

2d ed. § 118, and cases cited; Russell v. Lincoln, 200 Ill. 511, 65 N. E. 1088, and authorities therein cited; Clark v. Elizabeth, 40 N. J. L. 172.

This rule of dedication by estoppel applies equally to public squares and parks, as to streets, alleys, and to individual grantees by purchase. Poudler v. Minneapolis, 103 Minn. 479, 115 N. W. 274; Watertown v. Cowen, 4 Paige, 510, 27 Am. Dec. 80; Fessler v. Union, 67 N. J. Eq. 14, 56 Atl. 272; Atty. Gen. v. Abbott, 154 Mass. 323, 13 L.R.A. 251, 28 N. E. 346; Sanborn v. Amarillo, 42 Tex. Civ. App. 115, 93 S. W. 473; Archer v. Salinas City, 93 Cal. 43, 16 L.R.A. 145, 28 Pac. 839; Florida East Coast R. Co. v. Worley, 49 Fla. 297, 38 So. 618; Carter v. Portland, 4 Or. 340; Pella v. Scholte, 24 Iowa, 283, 95 Am. Dec. 729; Russell v. Lincoln, 200 Ill. 511, 65 N. E. 1088; Abbott v. Cottage City, 143 Mass. 521, 58 Am. Rep. 143, 10 N. E. 325, and cases cited; Cole v. Minnesota Loan & T. Co. 17 N. D. 409, 117 N. W. 354, 17 Ann. Cas. 304; Lamoure v. Lasell, 26 N. D. 638, 145 N. W. 577; Atlas Lumber Co. v. Quirk, 28 S. D. 643, 135 N. W. 172.

The fact of dedication of a park, or public square, may be established in the same manner as in the case of highways and streets, and the statutory form of dedication has the same effect as a deed. 3 Dill. Mun. Corp. 5th ed. §§ 1071, 1095, (644), pp. 1096, 1747, note 1; Bayonne v. Ford, 43 N. J. L. 292; Fisk v. Ley, 76 Conn. 295, 56 Atl. 559.

The word "park" written upon a block on a map of city property indicates a public use; and conveyances made by the owner of the platted land, by use of and reference to such map, operate conclusively as a dedication of the block. Price v. Plainfield, 40 N. J. L. 608; Maywood Co. v. Maywood, 118 Ill. 61, 6 N. E. 866; Ehmen v. Gothenburg, 50 Neb. 715, 70 N. W. 237; 3 Dill. Mun. Corp. 5th ed. p. 1748, note 1; San Leandro v. Le Breton, 72 Cal. 170, 13 Pac. 405; Poudler v. Minneapolis, 103 Minn. 479, 115 N. W. 274; Evans v. Blankenship, 4 Ariz. 307, 39 Pac. 812.

The same doctrine applies to "a spring of water" set apart for "public use." M'Connell v. Lexington, 12 Wheat. 582, 6 L. ed. 735; Cincinnati v. White, 6 Pet. 431, 8 L. ed. 452; Bingham v. Walla Walla, 3 Wash. Terr. 68, 13 Pac. 408.

The term "park" as it is used in this country means a tract of land

within a town or city devoted to public purposes of amusement, pleasure, exercise, and recreation, and generally means a place open to the public for such uses and purposes. Ehmen v. Gothenburg, 50 Neb. 715, 70 N. W. 237; Ruch v. Rock Island, 5 Biss. 95, Fed. Cas. No. 12,105; Avondale Land Co. v. Avondale, 111 Ala. 523, 21 So. 318; Roberts v. Mathews, 137 Ala. 523, 97 Am. St. Rep. 56, 34 So. 624; East Birmingham Realty Co. v. Birmingham Mach. & Foundry Co. 160 Ala. 461, 49 So. 448; Evans v. Blankenship, 4 Ariz. 307, 39 Pac. 812; Frauenthal v. Slaten, 91 Ark. 350, 121 S. W. 395; San Leandro v. Le Breton, 72 Cal. 170, 13 Pac. 405; Archer v. Salinas City, 93 Cal. 43, 16 L.R.A. 145, 28 Pac. 839; Pierce v. Roberts, 57 Conn. 31, 17 Atl. 275; Florida East Coast R. Co. v. Worley, 49 Fla. 297, 38 So. 618; Smith v. Heath, 102 Ill. 130; Maywood Co. v. Maywood, 118 Ill. 61, 6 N. E. 866; Riverside v. MacLain, 210 Ill. 308, 66 L.R.A. 288, 102 Am. St. Rep. 164, 71 N. E. 408; Logansport v. Dunn, 8 Ind. 378; Rhodes v. Brightwood, 145 Ind. 21, 43 N. E. 942; Bennett v. Seibert, 10 Ind. App. 369, 35 N. E. 35, 37 N. E. 1071; Fisher v. Beard, 40 Iowa, 625; Warren v. Lyon City, 22 Iowa, 351; Pella v. Scholte, 24 Iowa, 283, 95 Am. Dec. 729; Daughters v. Riley County, 81 Kan. 548, 27 L.R.A. (N.S.) 938, 106 Pac. 297; Rowan v. Portland, 8 B. Mon. 232; Elliott v. Louisville, 123 Ky. 278, 90 S. W. 990; Northport Wesleyan Grove Campmeeting Asso. v. Andrews, 104 Me. 342, 20 L.R.A.(N.S.) 976, 71 Atl. 1027; Abbott v. Cottage City, 143 Mass. 521, 58 Am. Rep. 143, 10 N. E. 325; Atty. Gen. v. Abbott, 154 Mass. 323, 13 L.R.A. 251, 28 N. E. 346; Sinclair v. Comstock, Harr. ch. (Mich.) 404; Conkling v. Mackinaw City, 120 Mich. 67, 79 N. W. 6; Banker v. Johnston, 21 Mich. 319; Poudler v. Minneapolis, 103 Minn. 479, 115 N. W. 274; Rutherford v. Taylor, 38 Mo. 315; Price v. Thompson, 48 Mo. 363; Baker v. Vanderburg, 99 Mo. 378, 12 S. W. 462; Cummings v. St. Louis, 90 Mo. 259, 2 S. W. 130; Methodist Episcopal Church v. Hoboken, 33 N. J. L. 13, 97 Am. Dec. 696; Price v. Plainfield, 40 N. J. L. 608; Bayonne v. Ford, 43 N. J. L. 292; Watertown v. Cowen, 4 Paige, 510, 27 Am. Dec. 80; De Witt v. Ithaca, 15 Hun, 568; Buffalo v. Delaware, L. & W. R. Co. 178 N. Y. 561, 70 N. E. 1097; Perrin v. New York C. R. Co. 36 N. Y. 120; Conrad v. West End Hotel & Land Co. 126 N. C. 776, 36 S. E. 282; Milliken v. Denny, 141 N. C. 224, 53 S. E. 867; Huber v. Gazley, 18 Ohio, 18; Carter v. Portland, 4 Or. 340; Church v. Portland, 18 Or. 73, 6 L.R.A. 259, 22 Pac. 528;

Morrow v. Highland Grove Traction Co. 219 Pa. 619, 123 Am. St. Rep. 577, 69 Atl. 41; Gillean v. Frost, 25 Tex. Civ. App. 371, 61 S. W. 345; Abbott v. Mills, 3 Vt. 521, 23 Am. Dec. 222; Leuders v. Tenino, 49 Wash. 521, 95 Pac. 1089; Shertzer v. Hillman Invest. Co. 52 Wash. 492, 100 Pac. 982.

Where lands are so platted for town or city purposes, and the plats so marked and lots are sold with reference to such plats, public policy requires that the legal consequences of sales made under such conditions shall be neither uncertain nor obscure, and such beneficial results can be secured only by maintaining the rule that such acts and conduct amount to a dedication of such parts of said lands as are marked for park or public square use, and such rule is not to be frittered away by frivolous circumstances, or other vague indications of an intention inconsistent with the presumption that follows from such specified acts of a dedicatory design. Bayonne v. Ford, 43 N. J. L. 292; Price v. Plainfield, 40 N. J. L. 608; Archer v. Salinas City, 93 Cal. 43, 16 L.R.A. 145, 28 Pac. 839; Abbott v. Mills, 3 Vt. 521, 23 Am. Dec. 222.

Such rule is illustrated and followed in many cases. Pierce v. Roberts, 57 Conn. 31, 17 Atl. 275; Rhodes v. Brightwood, 145 Ind. 21, 43 N. E. 942; Morrow v. Highland Grove Traction Co. 219 Pa. 619, 123 Am. St. Rep. 677, 69 Atl. 41.

Estoppel by abandonment cannot arise against a city or municipality, except by long-continued nonuse and by acts clearly indicating abandonment by the public, and by long adverse use of such property, with the apparent will and consent of the public. Davies v. Huebner, 45 Iowa, 574; Biglow v. Ritter, 131 Iowa, 213, 108 N. W. 218; Oliver v. Synhorst, 48 Or. 292, 7 L.R.A.(N.S.) 243, 86 Pac. 376; Bangor Twp. v. Bay City Traction & Electric Co. 147 Mich. 165, 7 L.R.A.(N.S.) 1187, 118 Am. St. Rep. 546, 110 N. W. 490, 11 Ann. Cas. 293; Poudler v. Minneapolis, 103 Minn. 479, 115 N. W. 274; Grogan v. Haywood, 6 Sawy. 498, 4 Fed. 161.

The city is not precluded from obtaining the land dedicated to the public for park purposes by the fact that, after dedication, it assessed the land for municipal taxes. Evans v. Blankenship, 4 Ariz. 307, 39 Pac. 812; San Leandro v. Le Breton, 72 Cal. 170, 13 Pac. 405; Ashland v. Chicago & N. W. R. Co. 105 Wis. 398, 80 N. W. 1101; Reuter v. Lawe, 94 Wis. 300, 34 L.R.A. 733, 59 Am. St. Rep. 891, 68 N. W. 955.

*James Johnson* and *Palda, Aaker, & Greene,* for respondents.

There is no stronger proof of a person's claim to real property than his voluntary payment of taxes imposed upon it. If plaintiffs had ever intended that this tract of land should be devoted solely to public uses, they would never have voluntarily paid taxes thereon. Case v. Favier, 12 Minn. 89, Gil. 48; Trerice v. Barteau, 54 Wis. 99, 11 N. W. 244; Canton Co. v. Baltimore, 106 Md. 69, 11 L.R.A.(N.S.) 133, 66 Atl. 679, 67 Atl. 274.

There has never been any common-law dedication of the land in question. Cole v. Minnesota Loan & T. Co. 17 N. D. 409, 117 N. W. 354, 17 Ann. Cas. 304.

Acceptance by the public is necessary to dedication, either statutory or at common law. Donovan v. Allert, 11 N. D. 289, 58 L.R.A. 775, 95 Am. St. Rep. 720, 91 N. W. 441; Northern P. R. Co. v. Lake, 10 N. D. 541, 88 N. W. 461; Rev. Codes 1905, § 2422, Comp. Laws 1913, § 3297; Wayne County v. Miller, 31 Mich. 447; Field v. Manchester, 32 Mich. 279; Canton Co. v. Baltimore, 106 Md. 69, 11 L.R.A.(N.S.) 129, 66 Atl. 679, 67 Atl. 274; Hamilton v. Chicago, B. & Q. R. Co. 124 Ill. 235, 15 N. E. 854; Jordan v. Chenoa, 166 Ill. 530, 47 N. E. 191.

CHRISTIANSON, J. The question presented for our determination on this appeal is whether a certain tract of land situate within the corporate limits of the city of Minot is a public park, dedicated by the owners to the use of the public, and as such subject to, and under the control of, the board of park commissioners of that city; or the private property of the plaintiffs. The plaintiffs prevailed in the courts below, and defendants have appealed, and demanded a trial *de novo* in this court.

The land in question is a portion of a larger tract which the plaintiffs purchased in January, 1905, from one Sevald H. Johnson. The property was purchased and owned jointly by Erick R. Ramstad, James Johnson, and Joseph Roach, but the legal title was taken only in the name of the plaintiff Erick R. Ramstad, and he appeared as the sole record owner. The warranty deed from Sevald H. Johnson to Erick R. Ramstad was recorded in the office of the register of deeds of Ward county on January 12, 1905. Thereafter Ramstad as owner of the property caused the same to be surveyed and platted as an addition to the city of Minot under the name of "North Minot." The

plat shows that there are in all 106 lots in the addition. Near the center of the tract, covered by the plat, was a lake (at least it is so designated on the plat, while the evidence shows that it was rather a low, swampy tract on which there was standing water at all times). The tract involved in this litigation is that part of the tract which is designated as "Lincoln park." It is also designated as lot 4 of block 8 of this addition. The map or plat of such survey was duly executed and acknowledged by the plaintiff Ramstad as proprietor, and certified by the surveyor on May 12, 1905, and was thereafter on May 13, 1905, duly recorded in the office of the register of deeds of Ward county, North Dakota.

The following is an exact reproduction of the plat:—

Indorsed upon the plat as recorded is the following statement signed and acknowledged by Ramstad:

"General Description. Know all men by these presents that Erick R. Ramstad, the owner and proprietor of the following described land— . . . has caused the same to be surveyed and platted, and hereby donates and dedicates to the public use all the streets and alleys thereon shown."

It is conceded that the plaintiff Ramstad remained the ostensible owner of the premises, and had exclusive control and management of the platting of the addition, and of the sale of lots therein.

The plaintiff Johnson testified:

Q. Did you sell any lots in this addition, Mr. Johnson?

A. I did not sell any.

Q. You did not have anything to do with the selling of the lots?

A. I did not sell any lots.

Q. Are you positive of that?

A. I am sure about it, there was only one man that sold the lots.

The plaintiff Ramstad testified in part as follows:

Q. Mr. Ramstad, the tracts of land designated on the plat "Lincoln park" is surrounded by lots, is it not, platted lots?

A. Platted around them.

Q. The lots adjacent to the property called Lincoln park have been sold?

A. Yes.

Q. In the sale of the lots, did you use a plat or map similar to this?

A. Similar to this, a little bigger.

Q. And the property was sold or designated on that plat?

A. Yes, the same as this.

Q. That is, you used that plat, and the property around there was sold with reference to that plat?

A. You mean the lots?

Q. Yes?

A. Yes.

Q. The plat from which you sold was the same as this, except larger?

A. I got it in my pocket here, if you want to see it.

Q. And the plat that you used had lot 4 designated as Lincoln park on it?

A. Yes.

Q. The lots were platted around Lincoln park the same as exhibit 1?

A. Yes.

Q. Let us see the plat.

A. This is the same thing, only the bottom is torn off. I had a larger one, but this is the plat I used all the time.

Q. The plat you used selling lots adjacent to Lincoln park is exhibit A, is it not?

A. Yes, that is the plat I used.

Q. The various lots were pointed out on that plat?

A. Yes.

Q. That plat is in the same condition as it was at the time you made the various sales?

A. Yes.

Q. With the exception of some tears across the bottom?

A. Yes. The same thing.

Q. Do I understand you to testify that all the lots adjoining the park designated as Lincoln park have been sold?

A. All the lots.

Q. They are sold for resident purposes?

A. Yes.

Q. And there are and have been quite a number of houses constructed there?

A. Quite a number of houses. . . .

Q. When did you sell the last lot which faces Lincoln park or is around Lincoln park as near as you can state?

A. I cannot remember.

Q. As near as you can state, Mr. Ramstad, would it be a year ago?

A. It would be more than that.

Q. Have you any lots left in that addition at the present time?

A. No more lots.

Q. How long since you sold the last lot in that addition?

A. Three or four years ago, I think, is the last one.

Q. Surrounding the park, about how many lots have buildings been

31 N. D.—33.

constructed on, about how many buildings have been constructed around the park?

A. You mean facing the park?

Q. No, not facing it, how many around here have buildings been constructed, would there be half of them vacant now?

A. The lots?

Q. The lots immediately adjoining the park?

A. Oh, yes.

Q. More than half of them?

A. I would not say more than there is quite a number of them here.

Q. But they have been sold?

A. They have been sold.   .   .   .

Q. Mr. Greene asked you if at the time you had some sales you took the prospective purchaser to the land itself, you also thought you did in those cases, you also had a map, did you not or had exhibit A in most cases?

A. Yes.

Q. And the majority of the lots and practically all of the lots in that addition were sold from exhibit A?

A. Yes, most of them.

Q. Did you ever make any statement to Mr. Lee that you intended to plat this lot 4, subdivide it into lots?

A. I never done such a thing.

Q. Did you have any intention of doing such a thing?

A. No.

Q. Did you during 1906, or at any time after the plat of this addition was filed, do any work in the way of beautifying this spot or improving it as a park?

A. Done some breaking and planted some trees along the north side along the avenue.

Q. What did you do in the way of improving the street and avenue fronting on the park?

A. Planted trees there.

Q. I mean as to the grading?

A. Yes, grading up and fixing up the street.

Q. What did you do in that regard or have you done, did you have anybody?

A. Yes, I did.

Q. Tell what it was.

A. I graded the street and planted the trees.

Q. When was that?

A. I graded the street in 1906.

Q. When did you plant any trees?

A. In 1906 and 1907.

Q. Did you or anybody, any other plaintiff to your knowledge, ever make any application to the city of Harrison township or the county officers or the boards to strike this particular tract off the tax list?

A. No.

### Cross-examination.

Q. You made some improvements there, that is, when you were selling the lots?

A. I graded the streets all through there in 1906.

Q. You mean you graded the streets through the entire addition don't you?

A. All over the addition.

Q. When you blocked it off in lots you graded off the various streets?

A. Yes.

Q. Throughout the entire addition?

A. Yes.

The testimony on the part of the plaintiffs further shows that at the time the tract was platted, the greater portion of "Lincoln park" was low, wet ground; that a considerable portion thereof was under water; that a number of the houses on the lots around the park do not face the park; but that in blocks 3, 4, 8, 10, and 12 there are a number of houses facing on Lincoln park. Also, that portions of Lincoln park were cultivated for a couple years, and that plaintiffs permitted various parties to utilize portions thereof for gardening purposes.

Among the witnesses called for the defendants were Mrs. Sibbald and Mrs. Fedje, and the following synopsis of their testimony is taken from plaintiff's brief:

Mrs. Sibbald: I have lived in Minot about ten years. I owned some property in North Minot, at one time. I suppose I bought it from Mr. Ramstad, though I never saw him. Mr. Johnson negotiated and made out the deed for me. At the time the deed was made out I

was shown a plat; I suppose it was just like exhibit A. It was similar to that. I was shown there a territory marked as Lincoln park. I bought the property from the plat. I got the impression from the plat that it was to remain a public park. I don't know as the presence of the park would enhance the value of the property, but its presence was my reason for choosing those particular lots. It was the thing that induced me to buy. It would make the property more desirable for me.

(Cross-examination): I think I bought lots 8 and 9 in block 10. Mr. J. G. Moore showed me the lots. I don't know that he had a contract for the purchase, or that the contract was assigned to me. I never saw Mr. Ramstad, that I know of. I would not know him if I saw him. I don't know of any representations made by Mr. Johnson as to the park, except what I saw on the plat. The lots were not built on. They remained vacant until I sold them. All the information I had as to this park was from the mere fact that I saw it marked on the plat and from what Mr. Moore told me at the time I went over and saw the lots. I don't remember any representations by Mr. Johnson or Mr. Ramstad.

(Redirect examination): The papers were made out in Mr. Johnson's office. Mr. Moore told me of the addition over there, and these lots were across the street from the park, and he took me over and showed them to me. I wanted lots overlooking the park, and I believed that it was a park at the time I signed the contract and paid my money. I think the transaction was in 1906 or 1907.

Mrs. Fedje: I live in Minot, on the north side, and in the vicinity of Lincoln park. I own two lots, numbers 6 and 7 in block 10 of North Minot. I bought them from Erik Ramstad. He showed me a plat similar to exhibit A.

Q. Did he have any plat there that showed Lincoln park, if you remember?

A. I don't remember that. Mr. Ramstad said it was to be a park. Pointed to it and said: This is to be a park. That was at the time I bought the lots.

Q. Did the fact that Mr. Ramstad represented that it was to be a park enter into your buying the lots near the park?

A. Oh, partly. I wanted to buy lots near the park. Mr. Ramstad

did not say how large a space the park would be, nor whether there would be a body of water in it. It was pointed out as south of me. The conversation between us took place partly at his home. When I purchased the lots I believed there would be a park there.

(Cross-examination).

Q. Did Mr. Ramstad tell you that the park was given to the public to be a public park?

A. No, sir, he did not say anything to me about intending to fix it up himself for a park some time. He did not say whose it was, nor whether it was a public or private affair. I built a house on the lots and I live there.

(Redirect examination): Did you or did you not believe that it would be a park for the public for the public people of the city?

A. Yes, naturally I took it that way. I believe that when I bought the lots.

(Recross-examination): I paid $350 for the two lots. I didn't pay any more because of its being fronted on this park.

(Redirect examination): If the park which Mr. Ramstad pointed out was to be a park it would make my property more desirable.

At the time of the filing of this plat and for a period of four years thereafter, this platted tract was outside of the corporate limits of the city of Minot and was a part of Harrison township, but thereafter during the month of May, 1909, by proceedings duly had under the laws of this state, this platted district was annexed to and became a part of the city of Minot. The annexation proceedings were confirmed by this court in May, 1911, in the case of State ex rel. Johnson v. Clark, 21 N. D. 517, 131 N. W. 715.

In the fall of 1911, the city of Minot was duly organized as a park district, under the provisions of the laws of this state relating thereto, and the defendants in this action were chosen as, and still constitute, the board of park commissioners of such park district.

It is conceded that this tract was assessed for taxation in the township of Harrison and thereafter in the city of Minot in the name of the plaintiff Ramstad, for and during all the years from 1905 up to and including 1912, and that such taxes were paid by him. It is also conceded that there was no acceptance by the municipality, or any attempt

to exercise any dominion or control over the premises involved herein by any of its officers, until in May, 1913, at which time the board of park commissioners regularly adopted a resolution setting forth the election and organization of such board, and the duty of the board to supervise, maintain, and beautify the various parks of the city. The resolution further described with particularity six different parcels of land in said city as constituting the parks of the city,—one of which was the tract involved in this action. The resolution further stated that such parcels of real estate, constituting parks, still remained on the tax lists, but that the park board had taken control of these parks, and also taken steps to improve and beautify the same, and that therefore the park board requested the board of city commissioners of the city of Minot to strike the various tracts of real estate constituting such parks from the tax list for the year 1913, and thereafter. The board of city commissioners of the city of Minot, on May 19, 1913, complied with the request of such resolution and struck all of said properties, including the tract of land involved in this action, from the assessment roll, and said property has not since that time been assessed for taxation. Thereafter, about June, 1913, the defendants as such park commissioners entered upon the premises involved herein, and caused certain improvements to be made, including the planting of a number of trees. Plaintiffs thereupon demanded that defendants discontinue such improvements. Defendants refused to comply with this demand, and plaintiffs brought this action to enforce their rights as alleged owners of the premises.

Defendants contend that the plaintiffs by filing the plat, and selling lots with reference thereto, dedicated the tract designated thereon as Lincoln park to the public; and that under the provisions of § 3946, Comp. Laws, the filing of the plat constituted a conveyance thereof; that no acceptance was necessary; but that if acceptance was necessary that then the acts of the municipal officers in striking same from the tax list, and assuming control thereof, and planting trees thereon, constituted a sufficient acceptance.

Plaintiffs, however, contend that there was neither a statutory nor a common-law dedication; that the fact that the tract called "Lincoln park" was also designated on the map at lot 4 of block 8 was inconsistent with an intent to dedicate the same as a park, and that the numerical

designation will control; that, in any event, acceptance by the public within a reasonable time was necessary, and that the levy of taxes upon the premises, and the payments thereof by plaintiffs, was inconsistent with, and negatives, any intention on the part of the plaintiffs to dedicate, and on the part of the municipality to accept; that the acts of the defendant were insufficient to constitute acceptance, but if sufficient, came too late.

The statutory provisions of this state relating to the survey and platting of towns and additions; the preparation and filing of plats or maps of such surveys, and the dedication thereby of lands intended to be used for public purposes, so far as they are material to a consideration of the question involved in this case are as follows: "When any person wishes to lay out a town in this state or an addition or subdivision of out-lots, such person shall cause the same to be surveyed and a plat thereof made which shall particularly describe and set forth all the streets, alleys, commons or public grounds and all in and out-lots or fractional lots within or adjoining said town, giving the names, width, courses, boundaries and extent of all such streets and alleys." Comp. Laws, § 3942. "All the in-lots intended for sale shall be numbered in progressive numbers or by squares in which they are situated and their precise length and width shall be stated on said map or plat; and out-lots shall in like manner be surveyed and numbered and their precise length and width stated on the plat or map, together with any streets, alleys, or roads which shall divide or border the same." Comp. Laws, § 3943.

"The plat or map after having been completed shall be certified by the surveyer and the officers, and every person whose duty it shall be to comply with the foregoing requirements shall at or before the time of offering said plat or map for record acknowledge the same before some person authorized to take acknowledgments. A certificate of such acknowledgment shall by the officer taking the same be indorsed on the plat or map, which certificate of the survey and acknowledgment shall also be recorded and form a part of the record." Comp. Laws, § 3945.

"When the plat or map shall have been made out and certified, acknowledged and recorded as required by this chapter every donation or grant to the public, or to any individual, religious society or corporation, marked or noted as such on said plat or map, shall be deemed a sufficient conveyance to vest the fee simple of such parcel or parcels

of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against such donors, their heirs or representatives, to said donees or grantees, for their use for the uses and purposes therein named, expressed and intended, and no other use and purpose whatever; and the land intended to be used for the streets, alleys, ways, commons or other public uses in any town, city or addition thereto shall be held in the corporate name thereof in trust to and for the use and purposes set forth and expressed or intended." Comp. Laws, § 3946.

(1–2) It is true, as plaintiff's counsel contends, that an intent on the part of the owner to dedicate is essential. But the intention recognized by the court is to be ascertained from the acts of the owner, and not from the purpose hidden in his mind. "It is the intention which finds expression in conduct, and not that which is secreted in the heart of the owner, that the law regards." Dill. Mun. Corp. 5th ed. § 1079; McQuillin, Mun. Corp. § 1562.

(3) There is no question but that the plaintiffs herein not only caused the premises to be platted, and the plat recorded, but also sold lots with reference thereto. And that on such plat the premises involved herein were designated as "Lincoln park." It is generally held that such facts manifest an indisputable intention on the part of the plaintiffs to dedicate the public places designated on the map to public use.

"Dedications have been established in every conceivable way by which the intention of the party can be manifested. Where a plat is made and recorded, and lots are sold with reference thereto, the requisite intention is generally indisputable." Dillon, Mun. Corp. 5th ed. § 1079, p. 1706.

"If the owner plats his property and then sells lots pursuant to the plat, his intent to dedicate public places on such plat is shown, and he is estopped to deny a dedication as against such purchasers, and it seems his only way to retain the property so dedicated is to vacate the plat if he can obtain the consent of the purchasers, and the statute authorizes a vacation in such a case or does not forbid it. So, where the proprietor of land sells and conveys lots in conformity and with reference to a city map, on which his land is laid off into lots with streets, etc., such sales are a recognition and adoption of the map, and

amounts to a dedication of designated streets and public places to public use." McQuillin, Mun. Corp. § 1562, p. 3247.

"It is well settled and beyond dispute, that if the owner of land sells a lot or lots with reference to a plat or map made by him or by others, which shows on its face certain parts thereof marked as streets, alleys, parks, or other public places, the owner is estopped, as against the grantee or grantees, to assert title to such public places, and that the grantee or grantees have a right to require the grantor to keep such public places open for the use designated." McQuillin, Mun. Corp. § 1577, p. 3269.

"Where the owner of real property lays out a town upon it, and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, or where he sells with reference to the map of a town or city in which his land is so laid off, he thereby dedicates the streets and alleys to the use of the public, unless it appears, either by express statement in the conveyance or otherwise, that the mention of the street was solely for purposes of description, and not as a dedication thereof. On the same principle the owner will be held to have dedicated to the public use such pieces of land as are marked on the plat or map as squares, courts, or parks. The reason is that the grantor by making such a conveyance is estopped, as well in reference to the public as to his grantees, from denying the existence of the easement." 13 Cyc. 455. See also Cole v. Minnesota Loan & T. Co. 17 N. D. 409, 427, 117 N. W. 354, 17 Ann. Cas. 304.

Plaintiff's counsel, however, contend that there was no representation on the part of the owners that the premises in question were to be used for a public park, and that plaintiffs manifested no such intention. It is not seriously denied that the premises were to be used for a park when the proper time arrived; but it is most earnestly contended that it was to be, not a public, but a private, park, with title and control vested in the plaintiffs.

It is alleged in the complaint: "That at the times of the making and recording of said plat and at all times since, it was the purpose and designs of these plaintiffs as owners of said property to hold and preserve said lot four (4) as and for a private park, to be at their pleasure equipped and devoted to such purposes as they might see fit to devote the same; that no words of dedication of said lot four (4) for

public purposes are used in the certifying of said plat, and that said plaintiffs have never since the platting of said premises, by deed of conveyance or by any act or conduct on their part, donated or dedicated said premises to the public use."

(4–5) It will be observed that there is nothing on the map to indicate that Lincoln park is reserved by the owners. The very term "Lincoln park" indicates a dedication to public, rather than a reservation for private, use.

In municipal affairs, a park is a piece of ground set apart and maintained for public use, and laid out in such a way as to afford pleasure to the eye as well as opportunity for open-air recreation. (Com. v. Hazen, 207 Pa. 52, 57, 56 Atl. 263.)

"If the words 'public park' had been upon it, no question would have arisen. But a park in a city means to the sense of every person a place open to everyone. It carries no idea of restriction to any part of the public or to any specific number of persons. Restrictions as to time of entrance or behavior of those entering are conceivable, but the idea that any class of the community is to be excluded would not be entertained primarily by any person in connection with the idea of a park within the limits of a city. That it was to be a place of public resort would be the impression which any person would receive, by looking at the map in this case, delineating a tract of 60 acres, with streets, and a square or block, upon which is marked 'park.' The grantee in a deed made by reference to it has a right to so understand it. Neither the grantors nor any person claiming under them can come in, and against any such grantee, or against the public, set up an intent differing from that which the word adopted naturally imports. There is no such uncertainty of meaning as will let in parol testimony to vary or modify it. If the grantors had a different intention, that should have appeared from the papers themselves. The popular and natural meaning should have been so modified in accordance with such intention." Price v. Plainfield, 40 N. J. L. 608, 613.

In the case of Archer v. Salinas City, 93 Cal. 43, 49, 16 L.R.A. 145, 28 Pac. 839, the court said: "The word 'park,' written upon a block of land designated upon a map, is as significant of a dedication, and of the use to which the land is dedicated, as is the word 'street,' written upon such map. The word carries with itself the idea of an

open or inclosed tract of land for the comfort and enjoyment of the inhabitants of the city or town in which it is located, and is so defined by lexicographers. In England the word when applied to an inclosed tract of land in the country has a different signification, and signifies that the lands inclosed are the private grounds of the proprietor. In this country, too, a man may inclose his own land and style it a park, or give that name to his place, without giving to the public any right to its use, for in such a case there would be no semblance of dedication; but the meaning of a word is to be determined by the circumstances connected with its use. In London, as well as in any city in this country, the term 'park' signifies an open space intended for the recreation and enjoyment of the public, and this signification is the same whether the word be used alone or with some qualifying term, as Hyde park, or Regent's park, or, as in the present case, 'Central park.' Upon this point the authorities are uniform." See also Dill. Mun. Corp. 5th ed. § 1096.

The supreme court of Pennsylvania, in the case of Com. v. Hazen, 207 Pa. 52, 56 Atl. 263, held that the term "park" was not applicable to a private inclosure. The court said: "It may be conceded that the word 'park' has been used in other ages and in other countries, occasionally, to mean a tract of land inclosed and stocked with beasts of chase, such as that described by Xenophon as belonging to Cyrus, King of Persia, filled with wild beasts which he hunted on horseback; but we doubt whether the ordinary citizen of Pike county got his notion of a park from Xenophon. . . . But the American meaning of 'park' is . . . 'a piece of ground set apart and maintained for public use, and laid out in such a way as to afford pleasure to the eye as well as opportunity for open-air recreation.'" This definition gives the common understanding of the term. It fits Fairmount park, Philadelphia; Central park, New York; Highland park, Pittsburg, and probably every public park in the country. It is not applicable to private inclosures enjoyed by the few to the exclusion of the public; it is not applicable to a game and fish preserve, which the subject of this act clearly is, as understood both in this country and in England. By this title the resident of Pike county, even if he knew the park was to be located in his county, would assume it would be an open place for his and his family's recreation along with others of the public. He would

not dream that it was for the exclusive enjoyment of the few; that he would be haled before a magistrate by a deputy sheriff, fined and possibly imprisoned, if he set foot upon it."

In the case of Ehmen v. Gothenburg, 50 Neb. 715, 70 N. W. 237, it was held that the mere fact that the park was designated by the proprietor's name did not imply private ownership. And it seems obvious that a designation of the park under the name of "Lincoln park" is far more indicative of a dedication to public use than if the park had been designated "Ramstad's park." See also authorities cited in 6 Words & Phrases, 1st series; 3 Words & Phrases, 2d series; see also Bouvier's Law Dict.; Black's Law Dict.

Plaintiff's counsel also contend that the plat negatives any intent on the part of the proprietor to dedicate the tract involved herein to public use, for two reasons: (1) That the tract, in addition to being designated as Lincoln park, is also designated as lot 4 of block 8; and that, therefore, under the provisions of § 3943, Comp. Laws, the latter designation indicates that said lot was intended for sale the same as other lots in the addition. (2) That the proprietor's certificate attached to the plat makes no reference to a park, while it specifically mentions streets and alleys. We are unable to agree with plaintiff's counsel in either proposition.

(6) The plaintiff Ramstad in his testimony denies any intention of subdividing and offering Lincoln park for sale; and the complaint in this action expressly alleges that this tract was to be a park. Hence, it is apparent that the plaintiffs themselves disclaim that the numerical designation was placed thereon for the purpose of manifesting an intention on the part of the owners that the lot was for sale. It is also conceded that the tract involved herein contains in all between 15 and 20 acres of land, and is too large to be sold as a lot without further subdivision. A significant fact to be considered in this connection is that all the other lots in the addition had been sold long prior to the commencement of this action,—the tract involved herein being the only one out of all the 106 lots remaining unsold.

The supreme court of Michigan in the case of Baker v. Johnston, 21 Mich. 320, passed on the same proposition, under a statute apparently identical with our own. That court said: "It is claimed, however, that, as this square, although marked 'public square,' is also marked as

'block No. 6,' the latter designation is inconsistent with any public designation, because the statute requires the person making the plat to describe 'all the lots intended for sale by progressive numbers.' We do not think that this provision would invalidate the designation of a block by its number for any lawful public purpose. It was merely designed to produce some degree of harmony in the numbering, and to facilitate the location and description of lots. And in case a block offered to the public should be refused, it is evident that its being numbered with the rest in regular course would then tend to prevent any break in the continuity of the numbering, and lead to harmony instead of confusion. We think there is no force in this objection."

Nor do we believe that the proprietor's certificate indicates an intention to reserve the premises as the private property of the owners, sufficient to overcome the intent to dedicate manifested by the owner's designation of the premises as Lincoln park on the recorded plat, and sale of lots with reference thereto. It may be observed that the laws of this state make no provision for the form of a proprietor's certificate attached to the map; but such laws do provide that dedication is effected by marking or noting on the map every donation or grant to the public. Comp. Laws, § 3946.

In the case of Bayonne v. Ford, 43 N. J. L. 292, it was claimed that the form of designation of the park on the map indicated a reservation of private ownership, and negatived any intention to dedicate to public use. In discussing the question the court said: "As the practice of selling city lots by reference and in conformity to maps of this description is very prevalent in this state, public policy seems to require that the legal consequences of sales under such conditions should be neither uncertain nor obscure; and such beneficial result can be secured by maintaining that the rule established by the case just cited is not to be frittered away by frivolous circumstances, or other vague indications of an intention inconsistent with the presumption from the specified acts, of a dedicatory design. The reasonable inference from the existence on a map of this description of a tract marked off as a park or other public improvement is that such easement is intended to give value to the adjacent lots, and after such inference has been drawn and sales effected on that footing, the burthen should be thrown on the vendor to show, by the clearest proofs, that the inference thus made was unwar-

ranted. In the case at hand, it seems to me that the proof designed for that end is of the slenderest and most inconclusive character. On the map in question the section of land set off as a park has this description; *viz.,* 'Annette park, now belonging to R. Graves;' and the contention is that this phrase, expressive of ownership, distinguishes this case from that of Price v. Plainfield. But the terms relied on do not sufficiently express the idea sought to be attributed to them. The assertion of ownership comprised in these words does not reach to the point of inquiry, which is as to the use which the owner intends to make of the land admittedly owned by him. The phrase denotes a claim of ownership when the proof was made, but it denotes nothing with respect to the purpose to which the premises are to be applied in the future, whether they are to be retained or sold, as dedicated." See also Ehmen v. Gothenburg, 50 Neb. 715, 70 N. W. 237.

The contentions of plaintiffs' counsel as to both propositions are also refuted by the testimony of the surveyor, who prepared the original plat.

He was called as a witness for the plaintiffs, and testified as follows:
"My name is M. E. Severance. I was a qualified surveyor in May, 1905."

Q. I show you exhibit, which is marked exhibit 1, and ask you if you are the surveyor who prepared the original plat of which that is a copy?

A. I did.

Q. Who employed you to do that work?

A. Mr. Ramstad.

Q. The plat was prepared by yourself as surveyor?

A. Yes, sir.

Q. Was any statement made to you by Mr. Ramstad at the time of the preparation of that plat as to the character of the lot 4, block 8 which is marked as Lincoln park, whether it was to be a private or public park?

A. There was not anything more than is stated on the plat, it was a park, Lincoln park.

It should be remembered that this testimony was offered by the plain-

tiffs. Hence, it is unnecessary for us to consider whether it was admissible, and we express no opinion upon that question.

Plaintiff's counsel next contend that the dedication did not become effective or vest any rights in the municipality until it was accepted in some manner by the public, or by the municipal officers.

(7) In this state a statutory dedication is in the nature of a grant. Comp. Laws, § 3946; Cole v. Minnesota Loan & T. Co. 17 N. D. 409, 419, 117 N. W. 354, 17 Ann. Cas. 304. It is almost elementary that a grant does not become effective until accepted by the grantee. 13 Cyc. 570, 571; 13 Ballard, Real Prop. § 146. It is true, however, that acceptance of a grant need not be by formal or express words to that effect, but may be by acts, conduct, or words of the parties showing an intention to accept. It is also true, as a general rule, that delivery of a grant implies its acceptance by the grantee, in the absence of fraud, artifice, or imposition. 13 Cyc. 571. And acceptance of a grant beneficial to the grantee may be presumed. This is especially true where it conveys valuable property, and creates no obligation or burden to be assumed by the grantee. 13 Ballard, Real Prop. § 146; 13 Cyc. 570. While it is true that the owner by platting land, and the sale and conveyance of lots, with reference to the plat, as a general rule, is estopped to deny the dedication of the parts of the tract, marked on the plat as streets, alleys, parks, or other public places, as against his grantees; or may even be estopped to revoke or deny such dedication as against the public,—still it does not necessarily follow that the grant thereby becomes vested in, or the dedication accepted by, the municipality. Ownership and control by the municipality may, and in a number of cases would, entail burdens and expense. And it seems obvious that a municipality cannot have undesirable properties thrust upon it, and be burdened with the various duties, expenses, and liabilities incident to ownership, without some action, direct or implied on its part showing acceptance, any more than a private individual can have such burdens thrust upon him without acceptance on his part.

(8–9) While there is a great deal of conflict in the authorities upon the question of whether an acceptance is necessary in the case of a statutory dedication, still we believe that the better and more prevalent rule is that an acceptance is necessary. The rule seems sound and logical, and has the support of excellent authority.

The supreme court of Michigan, in the case of Wayne County v. Miller, 31 Mich. 447, in an opinion by Judge Cooley, said: "It concerns the parties in this case, however, to know when it is that the peculiar fee the statute contemplates actually vests in the county. The plaintiff assumes that this takes place immediately a plat duly executed is properly recorded. As the execution and recording of the plat is wholly a private matter, subject to no public supervision whatever, this view would enable proprietors of lands to lay out so many streets and avenues as they might see fit, and wherever their private interests should determine; and whether the streets were desired by the public or not, the private ownership would be displaced. Either one of two consequences must then follow,—the public must be under some obligations to treat the land as constituting a street, and be subject to such liabilities as that fact would impose, or the land must remain waste property, in the hands of an owner who cannot use it for the purposes of profit, and who at the same time refuses to put it to the purposes contemplated in making the plat. . . .

"But if the plat is regarded as a grant, it is equally necessary that there should be acceptance. No one can thrust a grant upon another without his assent. Thompson v. Leach, 2 Vent. 198; Jackson ex dem. Smith v. Goodell, 20 Johns. 188; Hurst v. McNeil, 1 Wash. C. C. 70, Fed. Cas. No. 6,936. It is true, acceptance of a grant may be presumed when it is beneficial (Tompkins v. Wheeler, 16 Pet. 118, 10 L. ed. 908; Maynard v. Maynard, 10 Mass. 456, 6 Am. Dec. 146; Church v. Gilman, 15 Wend. 661, 663, 30 Am. Dec. 82; Peavey v. Tilton, 18 N. H. 151, 45 Am. Dec. 365; Townson v. Tickell, 3 Barn. & Ald. 36, 22 Revised Rep. 291); but there can be no conclusive presumption that a grant of land for a public way is so. We may almost take judicial notice that an offer of land for such a purpose is often— and very properly—declined, for the reason that no such way as the one proposed is needed, and by the acceptance the public would be burdened with obligations without corresponding benefits."

McQuillin (McQuillin Mun. Corp. §§ 1576–1578) says: "The rule supported by the better reason, however, would seem to be that, even in the case of a statutory dedication, an acceptance should be necessary in order to make the municipality liable to maintain the streets or alleys and for injuries resulting from defects therein." § 1576.

"The general rule, however, seems to be that the platting of land and the sale of lots pursuant thereto constitute a dedication, if it may be so called, of the public places delineated upon the plat only as between the grantor and purchaser, and that, so far as the municipality is concerned, such acts amount to a mere offer of dedication, and there is no complete dedication without an acceptance of some kind by the municipality. In still other jurisdictions, it seems to be held that no acceptance is necessary, so far as the right of the municipality in and to the public places is concerned. . . .

"On a review of the authorities, the more prevalent and better rule would seem to be that there must be an acceptance, either express or implied, on the part of the municipality, in order to render it liable for repairs or for injuries resulting from a defect in the street or other public place; that the right to accept exists at least for a reasonable time unless the plat is legally vacated before acceptance, or the municipality is estopped from interfering because of acquiescence in the possession of the public places as private property, by the grantor or his grantees or third persons; that until acceptance the municipality should have no right to enforce the dedication by an action to enjoin the obstruction of the public place or the like, unless such an action of itself be considered an acceptance.

"The reason in support of requiring an acceptance is that the place offered to be dedicated may be one, because of its location or for other reasons, which would be a burden rather than a benefit to the municipality, or else the benefits would be slight in comparison to the burden, and in such a case the imposition of liability on the municipality without its consent is apparently unjust. On the other hand, it would seem that the municipality, where it does not accept the offer to dedicate, should not be entitled to the benefit of the dedication unless it is also burdened with the liabilities connected therewith." § 1577.

"A further exception is apparently declared by some authorities by holding that where the dedication confers a benefit on the public without imposing any burden, as when land is donated for a public park or square or school site, an acceptance will be presumed and the dedication becomes complete, as soon as the owner had manifested his intent by appropriate acts or declarations." § 1578.

(10) It is next contended that there never has been an acceptance

31 N. D.—34.

by the municipality, and that therefore the defendants have no right to exercise dominion over the property. That the acts of the municipal authorities in striking the property from the tax list, and subsequently improving the same, are not sufficient to constitute acceptance. It is contended that a formal acceptance by ordinance is necessary. This contention is not well founded. The question whether there has been an acceptance depends primarily upon whether there has been an intent to accept the offer to dedicate. McQuillin, Mun. Corp. § 1589, p. 3304.

"The methods in which the municipality may accept lands dedicated to public use, and become liable for the maintenance of streets, ways, and other public places, are of great variety, and may be said to include every act done by the municipality through its proper officers in the exercise of its jurisdiction and control of public streets and highways. When property is dedicated to public use for a street, way, or other purpose, the acceptance by the municipality need not be expressed and appear of record, but may be implied from any acts showing the recognition by the municipality of its existence as a public street or highway and the assumption of control over the same, as by repairs and improvements knowingly made and ordered, or knowingly paid for by the local authorities which has the legal power to adopt the street or highway." Dill. Mun. Corp. 5th ed. § 1087.

"Unless otherwise provided by statute or charter, there is no necessity for any formal acceptance of the dedication.

"Acceptance may be shown in a great many ways, by any act with respect to the property claimed to be dedicated that clearly indicates an assumption of jurisdiction and dominion over it. There need be but little affirmative action to indicate an intention to accept a dedication. So, there need not be any affirmative action on the part of the municipal authorities. To constitute an acceptance, the property dedicated need not be in the actual use or occupation of the public." McQuillin, Mun. Corp. § 1579.

"The acceptance of a dedication may be evidenced by acts of municipal officers, such as exercising authority over the property dedicated, to improve or regulate. . . . So, an acceptance may be shown by ordinances or resolutions adopting, or referring to and recognizing as corporate property, lands designated in a plat as public places or otherwise offered to be dedicated for public use; or by making a survey in

which the strip dedicated appears as a street, and the adoption of such survey as the official survey for the municipality. . . . The act of the municipal authorities in taking possession is an acceptance, as is, it seems, the inclusion of a street within the beat of a police officer." McQuillin, Mun. Corp. § 1580.

We are satisfied that the acts of the municipal authorities constituted a sufficient acceptance. The very fact that plaintiffs have found it necessary to bring this action, and that the municipal officers are here on appeal asserting their rights in the property, is of itself rather persuasive evidence of an acceptance.

It is next contended that if such acts constituted a sufficient acceptance, that such acceptance was not within a reasonable time, and that therefore the offer to dedicate must be deemed withdrawn.

(11–12) The recording of the plat, and sale of lots by the owner with reference thereto, was a grant by the owner to the public of the public places marked on the plat. This grant, it is true, was not binding upon, or effective against, the municipality until accepted by it, but the tender of conveyance on the part of the owner continued until withdrawn by the owner or until it was rejected by the municipality. The statutes of this state fix not only the method in which a dedication may be effected by the filing of a plat; but they also prescribe the manner in, and conditions under, which the plat may be vacated and the dedication revoked. Comp. Laws, §§ 3959–3966. See also Lamoure v. Lasell, 26 N. D. 638, 145 N. W. 577.

As the dedication was made by the statutory method of filing a plat, and the sale of lots by the owner with reference thereto, it could be withdrawn only by a vacation of the plat under the statute. Kimball v. Chicago, 253 Ill. 105, 97 N. E. 257, 259. See also McQuillin, Mun. Corp. §§ 1562, 1592; and Burroughs v. Cherokee, 134 Iowa, 429, 109 N. W. 876. In the case at bar the owners had made no attempt to withdraw the dedication by vacating the plat,—or in any other manner. The offer to dedicate remained in full force at the time of acceptance thereof by the municipal officers.

(13) As an acceptance may be accomplished either by a formal acceptance, or may be implied from any acts on the part of the municipality with respect to the property dedicated that clearly indicate an assumption of jurisdiction and dominion over it; so a rejection of the

dedication may be manifested either by a formal rejection on the part of the municipality, or may be implied from acts on the part of the municipality which clearly indicate an intention to reject the property dedicated. That is, the conduct of the municipality may be such that a change of its position would cause such injustice to private persons who had relied upon such conduct as to warrant the courts in applying the doctrine of equitable estoppel *in pais* against the municipality and the public, to prevent manifest injustice and wrong to those who relied upon and were misled by the conduct of the municipality and the public; but to create such estoppel something more must be shown than a mere failure on the part of the municipality to formally accept and use the property for its intended purpose, before the growth or expansion of the municipality has made it necessary or desirable to apply the property to the purpose for which it was dedicated. Dillon (Dill. Mun. Corp. 5th ed. § 1089) says: "It may be years before the convenience of the public or those who live upon adjacent lots requires that they should formally be taken in charge by the municipal authorities, and in the absence of acts showing a positive intention to revoke on the part of the owner, the right to accept the dedication will usually continue until the wants and conveniences of the public require the use of the dedicated streets."

While the authorities generally merely lay down the rule that acceptance must be within a reasonable time, still it seems obvious this is merely another way of saying that failure to accept for an unreasonable length of time is evidence of an intent to reject the dedication. In any event the municipality must be allowed a reasonable time in which to accept. And in order to be evidence of a rejection of the dedication, the delay of acceptance must be for such length of time and under such circumstances as to clearly indicate an intention to reject the dedication; or, as it has been said, "the delay of acceptance must be for such length of time and under such circumstances as to clearly indicate an abandonment of any intention to accept the offer of dedication." What is a reasonable or unreasonable time will necessarily depend on the condition and situation of the parties and the property, and generally on the circumstances of each particular case. Dill. Mun. Corp. 5th ed. § 1089; Burroughs v. Cherokee, 134 Iowa, 429, 109 N. W. 876.

"What is a reasonable time is a question of fact for the jury, who may

take into consideration not only the time that has elapsed, but also all the other facts and circumstances in the case.

"In determining whether the lapse of time precludes a municipality from accepting an offer to dedicate made by a plat, statutory or otherwise, something more than a mere lapse of time should be taken into consideration, in some cases. For instance, if the proprietor occupies the public places designated in the plat, and expends considerable sums in erecting buildings thereon with the acquiescence of the municipality, it would seem that the municipality would be equitably estopped to open the public place, after many years, notwithstanding the lapse of time might not be so great as to otherwise preclude an acceptance of the dedication.

"The lapse of thirty-four years, and of twenty years, has been held to preclude an acceptance, while, on the other hand, the lapse of such periods in particular places as fifty years, thirty years, twenty-seven years, twenty-five years, twenty-three years, and ten years, has been held not to preclude an acceptance thereafter." McQuillin, Mun. Corp. § 1587. See also Dill. Mun. Corp. 5th ed. § 1086.

A proprietor in preparing and recording a plat, and selling lots with reference thereto, proposes to the public that the tracts dedicated by such plat for public uses shall be used for the specified purposes at such times as the growth and expansion of the municipality makes it desirable or necessary for public convenience that they be so used. The dedication is to the public, and the municipality merely holds the title in trust for the public for the intended use. Comp. Laws, § 3946; see also Gordon County v. Calhoun, 128 Ga. 781, 58 S. E. 360. The municipal officers necessarily must have some discretion in determining when the public interests require an improvement of the property and the application thereof to the purpose for which it was dedicated.

Most plats in this state were laid out, and streets, alleys, and other public places marked thereon, dedicated with no intention on the part of the proprietor that the property so dedicated should be immediately improved and utilized for the public purposes for which they were dedicated. It is seldom, indeed, that all the property dedicated, such as streets, alleys, and parks, are needed, or put into immediate use. It might be many years before public convenience required that the property dedicated be improved and utilized by the public for the purpose

to which it was dedicated. In this case for instance,—at the time the property was platted it was outside of the corporate limits of the city; four years afterwards it was annexed. The city of Minot did not organize as a park district until in the fall of 1911; and the first official act on the part of the board of park commissioners (so far as the record in this case shows), to assume active control over, and make proper improvements in, any of the park properties of the city, was in the spring of 1913. No tax levy could have been made by the board of park commissioners until in 1912, and the moneys received from such taxes could hardly have been available for making improvements in park properties until the spring of 1913. The donor will be presumed by law to have contemplated this state of things, and imposed no condition upon the public to use the property dedicated until the public wants required its improvement and use for the purpose intended. Shea v. Ottumwa, 67 Iowa, 39, 24 N. W. 582. And the fact that during the time when public convenience does not require such use, the property is permitted to lie vacant, or is used by the donor or other private persons for purposes not inconsistent with the improvement and use thereof by the public when the time arrives when public convenience requires that the property be used for the purpose for which it was dedicated, will not work an estoppel against the municipality or the public. McClenehan v. Jesup, 144 Iowa, 352, 120 N. W. 74. Under the facts in this case, it seems quite clear that the municipal authorities assumed jurisdiction over, and sought to improve and utilize, the tract involved herein for park purposes, just as soon as public interests made this necessary. And the alleged use of portions of the property during a couple of summers for gardening purposes by the people living in that vicinity was not in any manner inconsistent with an intent to accept the dedication, and improve and use the premises for park purposes when the wants or convenience of the public so required. There is no contention that public interests required that the property involved in this action be improved or used for park purposes prior to the spring of 1913. The plaintiffs themselves, while alleging in their complaint that the property was intended for a private park, had failed to take any steps to improve or utilize it for that purpose. No authority has been called to our attention, and a diligent search has failed to discover any, supporting plaintiffs' contention that, under the facts and

circumstances in this case, the acceptance on the part of the municipality came too late.

(14) It is next vigorously asserted that the assessment and collection of taxes is not only inconsistent with an intent on the part of the owners to dedicate, but is virtually tantamount to a rejection on the part of the municipality. It frequently happens—as in this case—that land is platted where no incorporation exists. The dedicator, however, is to the public at large, and it is not absolutely necessary that there should be some donee or grantee or some organized body politic for whose benefit the dedication is made. "Hence, the fact that there is no municipal corporation in existence which is authorized to take advantage of the dedication at the time when the dedication evidences his intention to make it will not defeat the dedication; upon such a corporation coming into existence, whether by incorporation or by extension of the corporate limits to include the locus, the right to take advantage of the dedication on behalf of the public will vest therein if the dedication has not been previously revoked or recalled." Dill. Mun. Cor. § 1086.

While there are authorities holding that evidence of assessment or nonassessment, taxation or failure to tax, is admissible on the question of acceptance, still such evidence, although admissible, is by no means conclusive, and the fact that land is taxed by the municipality does not of itself negative an acceptance of an offer to dedicate the same for public purposes.

The supreme court of Michigan in the case of Baker v. Johnston, 21 Mich. 320, 350, in considering this proposition, said: "The assessment or nonassessment of the premises we do not regard as material, as the assessing officers do not represent the public for the acceptance of dedications." And the supreme court of California, in San Leandro v. Le Breton, 72 Cal. 170, 13 Pac. 405, 408, said: "It is further insisted that because after 1871 the town and county assessors included this square in their assessment lists, and it was included in the general tax levy, and the defendant's intestate paid the taxes, and, in obedience to the municipal ordinances, improved the streets bordering on the square, the plaintiff is now estopped from claiming it as against the defendants. The answer is, that when the block was dedicated to the use of the public as a public square it became a part of the public grounds of the town, and could not be legally assessed or taxed for state,

county, or municipal purposes; and the erroneous action of officials in the respects named could not impair the rights of the public, or confer rights upon the defendants."

The principles announced by the supreme court of California and Michigan in the two cases from which we have quoted is supported by the great weight of authority. Ellsworth v. Grand Rapids, 27 Mich. 256; Rhodes v. Brightwood, 145 Ind. 21, 43 N. E. 942; Boise City v. Hon, 14 Idaho, 272, 94 Pac. 167; Ashland v. Chicago & N. W. R. Co. 105 Wis. 398, 405, 80 N. W. 1101; Hangar v. Des Moines, 109 Iowa, 480, 80 N. W. 549; Sanborn v. Amarillo, 42 Tex. Civ. App. 115, 93 S. W. 473; Arnold v. Orange, 73 N. J. Eq. 280, 66 Atl. 1052. In practically all the decisions wherein the payment of taxes has been considered as evidence tending to show a rejection of the offer to dedicate, there has generally, in addition thereto, been found to exist, not only a mere nonuser by the public or actual user by the donor; but also that private rights had grown up so as to be in equity paramount to the public right, and that an upholding of the public rights in the property would result in gross injustice to the holders of the private rights. No such conditions exist in the case at bar.

Upon the trial of this action the defendants offered to pay back to the plaintiffs all taxes paid by plaintiffs on the premises involved, subsequent to the filing of the plat. This offer still continues. Hence, no injury will result to the plaintiffs by reason of the assessment of the premises and the payment of taxes thereon by plaintiffs. If the taxes are repaid to the plaintiffs, with interest, they are in no worse position than if the grant had been accepted by formal ordinance of acceptance by the municipal authorities of the city of Minot immediately after the property came within the corporate limits of the city.

We reach the conclusion that the tract involved in this action constitutes a public park within the park district of the city of Minot, and subject to, and under the jurisdiction of, the defendants as the board of park commissioners of that city. The judgment of the District Court is reversed, and the cause remanded with directions to enter judgment in conformity with this decision.

Goss, J., did not participate, Hon. C. W. Buttz, Judge of the Second Judicial District, sitting in his stead.