# Commonwealth *v.* Hazen, Appellant.

*Corporations—Private corporations—Blooming Grove Park Association—Act of March* 23, 1871, *P. L.* 441.

The act of March 23, 1871, P. L. 441, entitled "An act to incorporate the Blooming Grove Park Association," created a private corporation.

*Constitutional law—Title of act—Act of March* 23, 1871, *P. L.* 441.

The Act of March 23, 1871, P. L. 441, entitled "An act to incorporate the Blooming Grove Park Association," violates the constitutional amendment of 1864, inasmuch as the subject of the act is not clearly expressed in the title.

*Park—Definition—Public park.*

The ordinary American meaning of a park is a piece of ground set apart and maintained for public use and laid out in such a way as to afford pleasure to the eye, as well as opportunity for open air recreation and the term is not applicable to private enclosures enjoyed by the few to the exclusion of the public and is therefore not applicable to a game and fish preserve.

Argued Feb. 24, 1903.    Appeal, No. 283, Jan. T., 1902, by defendant, from judgment of Superior Ct., Jan. T., 1902, No. 29, reversing order of Q. S. Pike Co., Oct. T., 1900, No. 6, quashing summary conviction in case of Commonwealth v. Charles Hazen.    Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.    Reversed.

Appeal from the Superior Court.

The facts appear by the opinion of the Supreme Court and 20 Pa. Superior Ct. 487.

*Error assigned* was the judgment of the Superior Court reversing the judgment of the court of quarter sessions.

*John G. Johnson,* with him *Harry T. Baker* and *Willard, Warren & Knapp,* for appellant.—The act of 1871 was not a public act : Murray's Lessee v. Hoboken Land, etc., Co., 18 How. 272 ; Holden v. Hardy, 169 U. S. 366 (18 Sup. Ct. Repr. 383) ; Jones v. Perry, 18 Tenn. 59; Eames v. Savage, 77 Me. 212 ; Millett v. People, 117 Ill. 294 (7 N. E. Repr. 631) ; Frorer v. People, 141 Ill. 171 (31 N. E. Repr. 395) ; Ritchie v. People, 155 Ill. 98 (40 N. E. Repr. 454) ; State v. Conlon, 65 Conn. 478 (33 Atl. Repr. 519).

Equality of rights, privileges and capacities unquestionably should be the aim of the law: Holden v. James, 11 Mass. 396; Bull v. Conroe, 13 Wis. 233; Gordon v. Winchester Bldg. Assn., 12 Bush, 110; Shreveport v. Levy, 26 La. Ann. 671.

The subject of the act is not clearly expressed in the title: Com. v. Jones, 4 Pa. Superior Ct. 362; Dorsey's App., 72 Pa. 192; Union Pass. Ry. Co.'s App., 81* Pa. 91; Phœnixville Road, 109 Pa. 44; Rogers v. Manufacturers' Improvement Co., 109 Pa. 109; Hatfield v. Com., 120 Pa. 395; Quinn v. Cumberland Co., 162 Pa. 55; Philadelphia v. Ridge Avenue Railway Co., 142 Pa. 484.

*Richard C. Dale*, with him *George R. Bull*, district attorney, *C. W. Bull* and *W. S. Kirkpatrick*, for appellee, cited as to the sufficiency of the title: Com. v. Green, 58 Pa. 226; Blood v. Mercelliott, 53 Pa. 391; Allegheny County Home's Case, 77 Pa. 77; State Line, etc., Railroad Company's App., 77 Pa. 429; Mauch Chunk v. McGee, 81 Pa. 433; Craig v. First Presbyterian Church, 88 Pa. 42; Taggart v. Com., 102 Pa. 354; Airy Street, 113 Pa. 281; Myers v. Com., 110 Pa. 217; Carothers v. Philadelphia Co., 118 Pa. 468; Millvale Boro. v. Evergreen Ry. Co., 131 Pa. 1; Com. v. Sellers, 130 Pa. 32; Donley v. Pittsburg, 147 Pa. 348; Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568; Harris's App., 160 Pa. 494; Com. v. Keystone Ben. Assn., 171 Pa. 465; Com. v. Lloyd, 178 Pa. 308; Sugar Notch Borough, 192 Pa. 349; Campbell's Registration, 197 Pa. 581; Merritt v. Whitlock, 200 Pa. 50; Hood v. Norton, 202 Pa. 114; Stegmaier v. Jones, 203 Pa. 47; Dailey v. Potter County, 203 Pa. 593; Commonwealth v. Moir, 199 Pa. 534.

OPINION BY MR. JUSTICE DEAN, October 12, 1903:

The appellant, Charles Hazen, was summarily convicted before Calvin O. Billings, a justice of the peace of Pike county, for the violation of the special act of assembly of March 23, 1871, in killing a deer belonging to the Blooming Grove Park Association and protected by the penal clauses of that act. The justice of the peace imposed a fine of $50.00 and costs and in default of payment he was sentenced to the county jail. Hazen appealed to the court of quarter sessions, which court,

in opinion filed, held the act referred to to be unconstitutional, in that: 1. The subject of the act is not clearly expressed in its title. 2. The body of the act contains more than one subject. 3. It deprives the defendant of the right of trial by jury in a case where at common law before the adoption of either of the constitutions of this commonwealth such right existed. Whereupon, he quashed and set aside the proceedings; further, directed that defendant be discharged. From this judgment the commonwealth took an appeal to the Superior Court, which court being of opinion that the special act was constitutional, directed that the order of the quarter sessions setting aside the proceedings and discharging the defendant be reversed, and that a procedendo be awarded to the lower court directing it to hear the case on its merits.

A constitutional question being involved an appeal of course, under the Superior Court act, lay to this court which was promptly taken by defendant. The averment of appellant is that the Superior Court erred in declaring the special act constitutional.

The "Blooming Grove Park Association," from a mere perusal of the act is clearly a private corporation. It is merely an association of individuals united for a special private purpose, permitted to do business under a particular name and have succession without dissolution. The members could have bought or leased the land they claim to own and could have enjoyed it in much the same way, under the protection of the general laws of the commonwealth, but the association would have been subject to the disruption and all the inconvenience incident to the death of members or assignment of their interests by any of the members. Its charter conferred upon the association perpetuity and the privilege of suing and being sued by its corporate name. Its purpose was not a public one, it met no public want as a turnpike company, railroad company or street railway corporation. And while the purposes of such a corporation are those which in a restricted sense, the sovereign who made the grant is desirous of promoting, for that desire is the very consideration of the grant, yet in the grant of a franchise to a public corporation, the consideration is much higher and broader; in the last it is the desire to benefit and promote the interests of all the public as well as the individual

interests of the corporators; and the public by the very fact of the grant have rights and privileges which they can enforce at law against the corporation.    Therefore, considering the purposes of the Park Association as distinguished from a public corporation, it is a private one, and in determining the legality of its creation and its corporate existence we must view it as a private corporation whose members are the principal, and except to a very slight extent, the only ones interested in its survival.

The title of the act is, "An act to incorporate the Blooming Grove Park Association."    The constitutional provision as to titles of acts in force at the legislative session of 1871, when the act was passed, was the amendment of 1864, which was copied almost verbatim in the constitution of 1874.    It is as follows: "No bill shall be passed containing more than one subject which shall be clearly expressed in its title."    We turn now to the act to discover its subject; we find it is the purpose of the incorporators to establish a game and fish preserve on land in three different townships in Pike county, Pennsylvania, their holdings not to exceed 30,000 acres with a capital not to exceed $500,000.    How is the object of the corporation to be accomplished?    By preserving, importing, breeding and propagating all kinds of game, animals, birds and fishes adapted to the climate and affording facilities to the members and persons licensed by the corporation to hunt and fish on the land of the corporation, and also privileging such persons to sell surplus game and fish; its stockholders further have the right under the act to provide themselves and others with an agreeable resort, a respectable hotel, cottage houses, stables, exercising grounds for horses and anything necessary or proper for their accommodation.    Then to subserve the purpose of the incorporators, follow the most drastic penal clauses.    All persons are forbidden to enter upon the 30,000 acres, or to hunt or fish thereon unless authorized by the corporation; any one found guilty of violating the prohibition shall be deemed guilty of a misdemeanor and fined before the magistrate hearing the complaint not less than $10.00 nor more than $50.00 in the discretion of the magistrate, for the first offense, and for the second offense, not less than $20.00 nor more than $100.    The magistrate imposing the fine has authority to imprison the offender in the

county jail in default of payment. The game keepers are to be deputized by the sheriffs of the counties of Monroe and Pike. The taxes imposed upon the corporation are not to exceed the taxes on other wild and unseated lands of the state. There are nineteen separate and elaborate sections of the act, every one relating to the preservation of game and fish and the punishment of the violators of its penal provisions; it is not necessary to further enumerate them. Throughout the entire body of the act its intent is plainly expressed; in no instance is there the least obscurity. It was the intention to provide an agreeable place of temporary residence for its stockholders and effectually prohibit any outsider from trespassing upon the 30,000 acres.

Is the subject of the act clearly expressed in the title as enjoined by the constitution? It is not necessary, as we have more than once held, that the title should be an index to the contents of the act; but we said In re Road in Borough of Phœnixville, 109 Pa. 44: "While it has been repeatedly said that the title of a bill need not be a complex index of its contents, it has never been doubted, that the subject of the proposed legislation must be so expressed in the title of the bill as to give notice of its purpose to members of the legislature and others specially interested." The Chief Justice, STERRETT, who delivered the opinion, cites a large number of cases bearing directly on the question decided since the adoption of the amendment of 1864. Can it be said, in any reasonable interpretation of our numerous decisions, that this title of a private bill gave notice of its purpose to members of the legislature or to the citizens and taxpayers of Pike county who were directly interested? For while all will concede from the very nature of their duties, that members of the legislature were specially interested in the subject of the bill, very little consideration will further convince us, that residents of Pike county were also specially interested. The act sets aside from all other interests in the county for a wholly distinct purpose 30,000 acres of land, a quantity almost equal in area to the ordinary township; this is to be absolutely owned, controlled and improved for the exclusive use of the stockholders; taxation is limited to a valuation put upon unseated wild lands of the state, a valuation equalling probably one or two dollars per

acre. Certainly the residents and taxpayers of Pike county were interested in the subject of the bill. But the title does not intimate in what county of the sixty-seven counties the park is located; it may be in Philadelphia county or any other. If the title had read Bloomingdale Park Association in Pike county, this might have attracted the attention of those interested in the subject of the bill.

But not only does the name fail to call attention to the location, but we think it misleading. The subject as seen from the body of the act, to our mind, not only does not indicate a park in the ordinary common acceptation of that term, but it plainly points out something entirely different. It may be conceded that the word " park " has been used in other ages and in other countries, occasionally, to mean a tract of land enclosed and stocked with beasts of chase, such as that described by Xenophon as belonging to Cyrus, King of Persia, filled with wild beasts which he hunted on horseback; but we doubt whether the ordinary citizen of Pike county got his notion of a park from Xenophon. Nor is it probable the members of the general assembly had his Anabasis before them when they passed the bill, at least not in the original Greek letter, which the learned counsel for appellee have so aptly quoted and printed in their paper-book. Nor do we think they got their meaning of the word from Abbott's Law Dictionary,—" A portion of one's ground which he has by lawful right enclosed and stocked with beasts of chase." There are other somewhat exceptional definitions which would perhaps fit certain parts of the subject described in the act, but the American meaning of " park," is that definition given in the Century Dictionary, No. 3,—" A piece of ground set apart and maintained for public use and laid out in such a way as to afford pleasure to the eye as well as opportunity for open air recreation." This definition gives the common understanding of the term. It fits Fairmount park, Philadelphia; Central park, New York; Highland park, Pittsburg, and probably every public park in the country. It is not applicable to private inclosures enjoyed by the few to the exclusion of the public; it is not applicable to a game and fish preserve, which the subject of this act clearly is, as understood both in this country and in England. By this title the resident of Pike county, even if he knew the park was to be

located in his county, would assume it would be an open place for his and his family's recreation along with others of the public. He would not dream that it was for the exclusive enjoyment of the few; that he would be haled before a magistrate by a deputy sheriff, fined and possibly imprisoned, if he set foot upon it. We think, therefore, while the title did not express the subject of the act at all, it was at the same time misleading, because it would prompt belief that it had reference to a wholly different subject: Dorsey's Appeal, 72 Pa. 192.

It must be noted that this act was passed in 1871, three years before the constitution of 1874 went into effect; and while the amendment of 1864 had cured the evils arising from "omnibus" legislation, there was another evil not yet touched, that of reading bills by their titles alone and at once passing them. It was not unusual at that time to pass a score of bills in an hour, that were read only by their titles; this can no longer be done: by article 3 of the constitution every bill must now be read at length on three different days in each house, besides must be printed for the use of the members before the final vote be taken.

While the main objects of this bill are commendable, we doubt if some of its penal provisions could have obtained a majority of the general assembly if the entire bill had been read in both houses on three different days, and printed for their use before a final vote. However this may be, we are decidedly of the opinion that the subject of the act is not clearly expressed in the title and the act is therefore unconstitutional.

This decision does not affect the property of the association except to again cast it upon the stockholders as individuals. While there is no artificial person to hold it, there is nothing to hinder their organization under the general laws of the commonwealth to carry out their avowed purpose under this act, with such reasonable protection in their purpose as the general laws afford.

As to the remaining two reasons for reversal specified in the assignments of error, to wit: (1) that the bill contains more than one subject; (2) that it deprives the defendant of his right of trial by jury, it is not necessary to consider them, as what we have already said is decisive of the issue.

The judgment of the Superior Court is reversed, and that of the court of quarter sessions is affirmed for reasons given in this opinion.