## Gordon, Secretary of Banking, v. Wenderoth et al.

*Charles Hasson* and *P. P. Sharkey*, for plaintiff.

*Philip N. Shettig, C. E. Davis*, and *G. H. Isaacson*, for defendants.

McCann, P. J., February 11, 1938.—The Secretary of Banking of the Commonwealth of Pennsylvania filed separate bills in equity and instituted actions in assumpsit against certain persons alleged to be stockholders of banks then closed and in course of liquidation. The Secretary of Banking seeks to recover from defendants double liability alleged to be imposed upon such stockholders by the Act of May 13, 1876, P. L. 161, and its amendments.

Answers were filed to the several bills in equity raising preliminary objections, denying, first, the right of the Secretary of Banking to proceed in equity, and second, attacking the constitutionality of the statute under which the several banks were organized. In the actions in assumpsit, affidavits of defense in the nature of demurrers were filed.

The question involved in all the cases which are presented for our consideration and determination is whether the statute under which double liability is sought to be enforced is constitutional. In the opinion which follows, we consider and discuss the legal questions raised by the preliminary objections and the affidavits of defense raising questions of law. The discussion in the instant case is to be considered the discussion and opinion in each of the separate cases in which we will make orders in accordance with the views herein expressed.

The question before us at present is entirely a question of law, and the determination of the cases, so far as we are concerned, will be based upon the conclusions set forth in this opinion.

It is admitted by all parties that the proceeding may be either in law or in equity, and we have considered the bills in equity and the separate actions in assumpsit upon the same plane, either remedy being available, and the same result may be obtained under each action.

The bills of complaint in the several cases are identical, except as respects names, amounts, and like matters. The statements of claim in the assumpsit cases are likewise

identical except as respects names, amounts, and like matters. The preliminary objections and the affidavits of defense are likewise identical, in that they raise the same constitutional questions. We take it, therefore, that all the cases before us can be disposed of in the same manner.

The questions involved are: First, whether the act which attempts to impose double liability gives notice in its title that such liability exists; second, whether the attempt to enforce double liability upon the stockholders of banks, when such double liability is not enforcible against stockholders of trust companies doing banking business, is in violation of the Constitution of Pennsylvania, proscribing class legislation, and the provision of the Federal Constitution relating to the denial of equal protection of the law.

We have not been referred to any case in the appellate or lower courts of this State in which the precise question has arisen.

In approaching the question as to the constitutionality of the Act of 1876, supra, it is important to bear in mind the popular conception of a corporation. Whether we regard it as a fictional entity, with the incident of perpetuity, or whether we look behind the fiction and approach the definition of a corporation as a group of individuals organized on the representative principle, action by which to bind the group must be taken through its representatives, or board of directors, perhaps the most compelling incident to the inception of a corporation is that those who invest in it risk only the amount of their investment, namely, the purchase price of the capital stock which they purchase. Double liability, in the popular sense, is repugnant to the idea of a corporation, and even in a legal sense is anomalous.

A corporation, as a business enterprise, grew out of the necessity for development of the industries and commerce of the Nation, and limited liability as an incident of the corporation encouraged people to invest their money for

the public good when they knew that they risked only the amount which they put in the venture. Nothing that has happened since corporations were first organized has changed this popular viewpoint, and the principal incident of a corporation is not perpetuity or continuity, but limited liability—in other words, that is the reason why people invest in corporate shares. It is economically possible to finance large enterprises by investment through individuals or partnership groups, but the risks incident to the success of large enterprises were such that individuals and groups were reluctant to invest when their liability was unlimited and their private fortunes might be wiped out. In the last analysis the most important incident of a corporation is limited liability. It is with this background that we must approach the act relating to the incorporation of State banks.

A banking institution is an ordinary business institution, the same as a railroad, steamship company, or any other proper business enterprise. There is no particular sanctity attached to the business of banking as distinguished from the business of railroading or merchandising.

The title to the Act of 1876 is as follows: "An act for the incorporation and regulation of banks of discount and and deposit." In the latter part of section 5 of said act appears the following:

"The shareholders of any corporation formed under this act, shall be individually responsible, equally and ratably, but not one for the other, for all contracts, debts, and engagements of such corporation to the amount of their stock therein at the par value thereof in addition to the par value of such shares."

There is no doubt that the legislature has the power to prescribe the conditions under which corporations may be formed, and it may attach as conditions to the enjoyment of the franchises such limitations and restrictions as the legislature may prescribe, even to the extent of destroying the purpose. However, it is only fair to assume

that such limitations and restrictions shall be set forth in the title to the act. Article III, sec. 3, of the Constitution of Pennsylvania provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title", and the courts have interpreted that to mean that the title must give reasonable notice of the contents of the act.

The rule of reason applied to the sufficiency of the title indicates that no one who purchased stock in a bank of discount and deposit could reasonably assume that double liability attached when such double liability is entirely at variance with any conception of a corporation. The general understanding of the public is that a stockholder in a corporation is one whose liability is equal to his agreement to contribute to the capital. The Act of 1876 seeks to change this definition by having it read: "A stockholder is one whose liability is double the amount he has agreed to contribute to the capital."

It may be argued that one who invests in a corporation takes a chance and is bound to know the extent of his liability, and that he is required to read the statute in full, but our courts have held otherwise—in other words, that the title of the act must give fair notice of its contents. Because of the multiplicity of corporations, their size, and the manner in which their stock is offered for sale, it is practically impossible for the average investor to make a complete examination of the statute authorizing such corporation, and he need go no further than the title to the act. Stocks in corporations, including bank stocks, are sold upon the stock exchange, are offered from hand to hand, and are bartered as freely as ordinary commodities, such as butter and eggs.

It could hardly be argued that this title would be sufficient in the case of any other corporate group, because the body of this act, wherein double liability is fixed, is entirely at variance with the popular conception of a corporation. That this is the viewpoint of both the legal profession and the layman is evidenced by the fact that the

great majority of people who purchased bank stock never knew there was any claim of double liability, and it is not surprising that this question has not reached the appellate courts for the reason that there have been very few cases of bank insolvency in which this question could have been raised prior to the depression which occasioned the failure of many banks. That it is economically undesirable is evidenced by the fact that the legislatures, both National and State, under the new banking laws, have eliminated entirely the question of double liability.

It has been further argued that the title in the present case is broad enough to cover such provision. In our opinion, the title to the act gave notice only that it authorized a banking business and provided for the regulation and internal government of the group.

In our opinion, if double liability, which is in the nature of a penalty, is to be imposed upon shareholders of a bank only, when limited liability attaches to shareholders of other similar corporations organized under statutes with similar titles, it must, if we are to apply the rule of reason and common sense, be specifically set forth in the title.

In Commonwealth v. Hazen, 207 Pa. 52 (1903), the title to the act in question was, " ' An act to incorporate the Blooming Grove Park Association.' The constitutional provision as to titles of acts in force at the legislative session of 1871, when the act was passed, was the amendment of 1864, which was copied almost verbatim in the constitution of 1874." This act sought to create a private corporation of that name and was held to violate the Constitution inasmuch as the subject of the act was not clearly expressed in the title. One of the principal matters considered by the court in its opinion, which was by Mr. Justice Dean, was whether or not an act entitled, "An act to incorporate a Park Association", gave notice that such association would be private as against public. The Supreme Court held that the common understanding of the meaning of the word "park" is a public

place of recreation open to all, and the definition contained in the act made it a private preserve for wealthy stockholders and not open to the public, who could enter thereon only as trespassers. The title was defective, as giving no notice of the contents, and the act was declared unconstitutional.

The reasoning in the park case applies aptly to the Banking Act of 1876. The common acceptance of the meaning of "corporation" is an association in which the shareholders are liable for no more than the amount of their subscriptions, whereas the definition contained in the act in question, of which no notice is given by the title, is an association in which the shareholders are liable for double the amount of their subscriptions, a thing entirely at variance with the true conception of a corporation.

It must be borne in mind that practically all turnpike companies, railroad corporations, manufacturing corporations, mining corporations, and mercantile corporations have a title similar to the present one, and it is unreasonable to single out a banking corporation, which is for a business purpose the same as all the others, and under a similar title attach to it the incident of double liability.

We think it would be seriously argued that if a clause providing for double liability as to any of these other business corporations appeared in the body of the act under a similar title the courts would hesitate to declare the title defective and in violation of the Constitution.

The Act of 1876 is general in its scope, and, insofar as its provisions do not contravene the doctrines laid down by the courts as to sufficiency of title, it is effective legislation. However, when its provisions go far afield to impose unusual liability upon bank stockholders, it undertakes to enact a type of legislation of which it is bound to give notice by its title. We do not question the right of the legislature to impose such conditions, or even more burdensome conditions upon a banking company, but it

must be done in accordance with the provisions of the Constitution of the Commonwealth of Pennsylvania.

Defendants raise another important question in the case, and that is that the particular act in question offends against section 7, art. III, of the Constitution of Pennsylvania, and section 1 of the fourteenth amendment to the Federal Constitution—in other words, that it is special class legislation and denial to them of the equal protection of the law.

While we believe that there is merit in this contention, we have not stressed it because we feel that the objection to the sufficiency of the title is good, and that the provisions of the act of assembly imposing double liability is unconstitutional.

And now, February 11, 1938, after argument and due consideration, the preliminary objections raised to the bill in equity are sustained, and judgment is directed to be entered for defendants.