## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Maymont Foundation

    v.

City of Richmond et al.

### Case No. D-3980

By JUDGE A. CHRISTIAN COMPTON

November 22, 1972

Enclosed you will find a copy of the order entered today overruling the "motions to dismiss" of the defendant City of Richmond.

In this declaratory judgment proceeding filed on the equity side of this Court on July 7, 1972, the Maymont Foundation, a non-profit, non-stock Virginia corporation, seeks an adjudication which declares that the City's entry into a certain agency agreement, set forth in an ordinance adopted February 17, 1972, would not violate the restrictions placed on the City's ownership of Maymont Park and cause the property to revert to the beneficiaries of the Estate of Sallie M. Dooley. The prayer of the bill also seeks an adjudication of "the respective rights of the plaintiff and all defendants in and to 'Maymont'."

The defendant City has filed two "motions to dismiss" which raise three issues to be decided at this time and which are, broadly stated, as follows: first, are all necessary parties joined as defendants; second, is the form of the order of publication proper; and, third, does the court have jurisdiction to decide these issues in a declaratory judgment proceeding?

The agreement in question provides that the plaintiff will undertake the management of Maymont Park and the construction of certain improvements therein, as outlined in a proposal filed as an exhibit herein, and further provides that the plaintiff shall raise by pledge or contribution the sum of $500,000 by June 30, 1973, or such later date as the City may agree to, the sum to be expended for capital improvements in the park.

"Maymont" was the Richmond residence of Sallie M. Dooley and was devised by her to the City by paragraph Third of her will "to be used as a public park, for the use and pleasure of the people of the City of Richmond." By ordinance in 1925, the City accepted ownership thereof following the probate of the will in the Circuit Court of Nelson County, Virginia, on September 17 of that year.

It is alleged that while the park has been financially supported in the past by public and private funds, that the City now is without funds to make substantial capital improvements to the park or to restore the Maymont Manor House and its grounds. Therefore, the plaintiff desires to participate with the City in a program of renovation, improvement, operation and maintenance of the park and the Manor House on the terms and conditions of the agreement aforesaid.

The plaintiff further alleges that an actual controversy exists as to whether the City can carry out the agency agreement without the ownership of "Maymont" reverting to the beneficiaries of the Dooley Estate because of a possible violation of the condition imposed on the City's rights in the property by the will. The City Attorney has advised the City Council that action which would allow the plaintiff to manage the park may operate to divest the City of its ownership thereof resulting in the reverter aforesaid.

By its terms, the ordinance in question will not become effective until a final judicial determination

is made as to whether the execution and performance of the terms of the agency agreement would result in the City's being divested of its ownership.

## Jurisdiction

In its pleadings, the City does not contest either this Court's jurisdiction of the subject matter of this suit nor does it contest the venue. Upon oral argument, counsel for the City observed this to be a suit to construe a will and argued that the Circuit Court of Nelson County was the proper forum for this litigation. The park being located within the City of Richmond, the venue for this suit is properly laid here. Code § 8-579(4). Moreover, this Court has jurisdiction to adjudicate issues involving restrictions on land. Furthermore, even assuming this to be strictly a suit to interpret a will, which it is not, such controversies may properly be determined in this Court by declaratory judgment. Code §§ 8-578, 17-164.

In its pleadings and argument in support thereof, the City does take the position that this is not an appropriate case for declaratory judgment. With this position the court does not agree.

This is precisely the type of issue the determination of which is contemplated by the declaratory judgment statutes. Code §§ 8-578 *et seq.* The plaintiff seeks to assist the City in the improvement of the property in question. The parties intend to enter into a written agreement to accomplish this purpose. An ordinance has been adopted as a means to this end but is conditioned upon the final judicial determination of a question of law raised by the attorney for one of the contracting parties. The determination involves, in part, the interpretation of a will. In short, the plaintiff (and the defendant City) desire to turn on the light before taking a step in the dark. Burks' Pleading and Practice, 4th Ed., § 192, p. 309. Consistent with the liberal interpretation and administration to be given to the declaratory judgment statutes "with a view to making the courts more serviceable to the people," as expressed in the Act, the court holds that this is a proper case for use of the declaratory judgment under these facts. Code § 8-585.

The required "actual controversy" exists based upon an "actual antagonistic assertion and denial of right." Code § 8-578. The plaintiff claims that the execution and performance of the terms of the contract will not operate to divest the City of ownership of the park. The City, through its attorney, takes issue with this position. "Specific adverse claims, based upon present rather than future or speculative facts, are ripe for judicial adjustment." *City of Fairfax v. Shanklin*, 205 Va. 227, 229 (1964). The ordinance has been enacted to be effective only upon a judicial determination of the question of law involved. Present facts are involved. This is not a situation where a great deal is left to speculation as was the case in *Shanklin*. While it is true that for any number of reasons the plaintiff, even if successful in this litigation, may elect not to enter into the proposed contract, nevertheless under the facts alleged in the petition, this appears to be a highly unlikely occurrence. Nor is this a case where the controversy is merely one of a disputed fact as in *Williams v. Bank of Norfolk*, 203 Va. 657, 663 (1962).

Nor is this a request for an opinion which will be advisory only. The defendants who have appeared each take issue with the plaintiff's position by filing answers which amount, in each instance, to a general denial. Accordingly, the entry of a judgment herein will operate as *res adjudicata* as to them. *Patterson's Ex'rs. v. Patterson*, 144 Va. 113, 120 (1926).

For the foregoing reasons, declaratory judgment is proper in this suit in this Court under these allegations.

### Parties

Contrary to the City's contention, it is not necessary that the plaintiff have a legal or equitable interest in the land in order to bring this suit. It is required that the plaintiff's interest be substantial, direct, present and peculiar to himself and not the public generally. 22 Am. Jur. 2d, *Declaratory Judgments*, § 79, p. 943. Such requirement is fully met here.

The City also asserts that the "heirs" of Mrs. Dooley, "or their successors in interest" should be made parties

to this proceeding. The plaintiff urges that only the heirs and legatees of the residuary legatees of the will have any potential interest in the property and the outcome of this suit, and since these persons have been joined as defendants, the proper parties are before the court.

The Virginia declaratory judgment statutes contain no specific requirement as to the proper parties to be joined. The Uniform Declaratory Judgments Act requires the joining of "all persons . . . who have or claim any interest which would be affected by the declaration." *Ibid*. § 80. See also 71 A.L.R.2d 760, § 14. Assuming that Virginia would follow this rule, it is apparent that the proper parties have been joined in this suit.

The possibility of reverter created by the will would be transferable under the will. Code §§ 55-6 and 64.1-46. The residuary clause of this will being unambiguous, any reversion thereunder would pass under the provisions of the residuary clause. Code § 64.1-65. Therefore, the heirs and legatees of the residuary legatees are the only persons whose interest would be affected by the declaration herein, and the heirs at law of the deceased are unnecessary parties to this litigation.

### Form of the Order of Publication

The City contends that the order of publication is insufficient because it fails to designate in the caption thereof "the heirs or residuary legatees of Mrs. Dooley, or their successors in interest." This position is not well taken.

It is clear from the body of the order that the plaintiff intends to join and give notice to all heirs and legatees of the residuary legatees of Mrs. Dooley. This is sufficient compliance with Code § 8-72.

For these reasons, the several motions of the City are overruled.

### January 2, 1973

Enclosed you will find a copy of the final decree entered today herein which grants the relief sought by the plaintiff in the prayer of its petition for a declaratory judgment.

The basic facts, which are stipulated, have been stated in the opinion of November 22, 1972.

The issue to be decided requires a determination, first, of the nature of the estate held by the defendant City in Maymont under the Sallie M. Dooley Will wherein the property was devised "to be used as a Public Park for the use and pleasure of the people of the City of Richmond" and wherein the Manor House was to be "used as a museum for the benefit and pleasure of the people of the City of Richmond."

The second determination to be made is whether, under whatever theory of ownership the City holds the property, the restrictions imposed by the Will would be violated by the proposed contract with the plaintiff which provides, subject to City control and approval, for the improvement, operation and maintenance of Maymont by the plaintiff as the City's agent.

The applicable law applied to the facts herein dictates a decision entirely in favor of the plaintiff.

At the outset, attention should be focused on the issue made by the pleadings which is whether the entry of the City into the agency agreement in question would violate any restrictions placed on the City's ownership of Maymont such as would cause the property to revert to the beneficiaries of the Sallie M. Dooley Estate. This is the controversy and the issue upon which a declaratory judgment is sought. The court should not inject itself into other questions not relevant to the legal issues posed. For example, the court should not and does not express an opinion on whether the plaintiff can more efficiently and effectively "manage" Maymont than can the City. The City devotes some of its argument to that question but such a consideration is irrelevant to the issue here and the determination of such a question in this suit lies in the legislative, and not the judicial, arena. Moreover, the court should not and does not decide whether the proposal of the plaintiff for the future development of Maymont is aesthetically, environmentally or ecologically sound. These matters, too, are, or have been, questions for consideration of the City Council. So long as the intended development of Maymont complies with the City's legal obligation to maintain Maymont as a park, the aforesaid considerations are not for judicial

decision in this suit at this time. So much for irrelevant issues outside of the scope of this suit.

Upon the questions presented, the court determines, first, that the City, under the language of Mrs. Dooley's Will, which incorporates her husband's words contained in his will, holds Maymont in fee simple absolute, subject to a restriction that it be used as a public park, and that the Manor House be used as a museum, for the use, benefit and pleasure of the people of the City of Richmond. The effect of this holding is that even if the restrictions of the Will were to be violated under the proposed agency contract, the property in question would not revert to the Dooley estate. If such restrictions are violated, the people of the City may enforce this trust for charitable purposes since the City is bound to hold this property for the use prescribed by the testatrix. Code § 55-27.

As the plaintiff argues, there are only two other choices in construing the legal effect of the words in question used by the testator. First, they could create a fee simple determinable (fee qualified) which is an estate limited by a special limitation which is itself a part of the original limitation, marking out or describing the utmost period during which the estate may endure, that is, *until* the event happens which of itself terminates the estate. Use of the words "while," "during," "until," or "as long as" create this special limitation. 1 Minor on Real Property, 2nd ed., §§ 164-65, pp. 225-227. See also 1 Restatement, Property, §§ 44 and 45.

Second, the words could be construed as creating a "fee simple upon condition" (fee simple subject to a condition subsequent) which terminates an estate "prematurely," that is, before the arrival of the time, expressed in the original limitation, it should regularly terminate. Such estate is created by use of the words "if," or "provided that," or "upon condition that." *Ibid.*

An examination of the Will clearly discloses that Mrs. Dooley intended to devise Maymont to the City with neither a "limitation" or a "condition" in the context discussed above. None of the words of limitation or condition aforesaid are found which apply to the use of the property as a public park. The Will specifically provides that the property is "to be used" as a Public Park and as a museum for the benefit and pleasure of the people

of Richmond. Moreover, there is no language in the Will which provides for the reversion or reverter in the event the restriction is disregarded. It is apparent, therefore, that a fee simple absolute subject to restriction was created. *Martin* v. *Norfolk Redevelopment and Housing Authority*, 205 Va. 942, 947 (1965); *Supervisors* v. *Bedford High School*, 92 Va. 292, 295 (1895). *See also* 15 A.L.R.2d 975, 977; *PCK Properties, Inc.* v. *City of Cuyahoga Falls*, 176 N.E.2d 441, 445 (Ohio App. 1960).

Having decided the first question in favor of the plaintiff, a resolution of the second issue becomes merely academic; however, it should be stated that the law is equally as clear that regardless of the estate created by the Will, the contemplated development of the Park by the plaintiff as shown by the evidence will not, under the law, cause Maymont to cease to be a "public park."

The Will does not define the term nor does it contain any additional precise directions concerning the use of the property. As the plaintiff argues, the omission of any modifying language in the Will supports the conclusion that the desires of Mrs. Dooley for the park were to be broadly construed consistent with her expressed desire that it was to be used for the benefit and pleasure of the people. It would unnecessarily prolong this opinion and serve no beneficial purpose to examine each item of the development plan and to discuss how it comports with the concept of a "public park." Suffice it to say that the proposed development is consistent with the terms of this general devise for public park purposes. Reference to several cases will amply demonstrate the state of the law on the subject. In *Nichols* v. *City of Rock Island*, 121 N.E.2d 799 (Ill. 1954), there was consideration of the purpose of a public park. It was stated that " '[p]ark purposes are not confined to a tract of land with trees, grass, and seats, but mean a tract of land ornamented and improved as a place of resort for the public, for recreation and amusement of the public. The construction and maintenance of a building for museums, art galleries, botanical and zoological gardens, and many other purposes, for the public benefit, are recognized as legitimate purposes. . . .' " 121 N.E.2d at p. 801. In another case relied on by the plaintiff is found this enlightening discussion of the use to which a public park may be put:

A public park may be defined as a tract of ground kept more or less in its natural state, or embellished by the planting of additional trees, and flowers, and devoted to the purposes of pleasure, recreation and amusement. In ancient times the term "park" was applied to an enclosed tract stocked with beasts of the chase, such as that described by Xenophon as belonging to Cyrus, King of Persia, but, as humorously pointed out by Mr. Justice Dean in Commonwealth v. Hazen, 207 Pa. 52, 57, 56 A. 263, 265 [1903], the ordinary citizen of today does not obtain his notion of a park from a reading of the Anabasis. In modern times the principal purpose of a park, namely, public recreation, is not limited to physical recreation but includes aesthetic recreation and mental and cultural entertainment as well. While the entire park acreage or any substantial part of it cannot, of course, be built upon so as unduly to destroy the enjoyment of fresh air, sunshine and exercise, the erection within its borders of monuments, museums, art galleries, public libraries, zoological and botanical gardens, and the like, is commonly recognized and accepted as being within the normal scope and ambit of public park purposes, and an open-air public auditorium comes within the same category as such other permissible structures. *Bernstein v. City of Pittsburgh*, 77 A.2d 452 at 455 (Pa. 1951).

*See also generally*, Anno., "Use to Which Park Property May be Devoted," 144 A.L.R. 486; 59 Am. Jur. 2d, *Parks, Squares, Etc.*, §§ 22 *et seq.*; 35 Words and Phrases, pp. 425-427.

The City raises other questions which are not only outside of the scope of the issue framed by the pleadings in this suit but which are also beyond the scope of the concluding paragraph of the ordinance in question and no comment here is necessary or proper thereon.

In view of what has been set out above, the court declares that the City's entry into the agency agreement with the plaintiff would not violate the restrictions placed on the City's ownership of Maymont nor would the execution and performance of such agreement by the City cause the property to revert to the beneficiaries of the Dooley Estate. Therefore, such agreement is permissible under the terms and provisions of the Dooley Wills.